CLERK'S OFFICE U.S. DIST COURT
AT CHARLOTTESVILLE, VA
FILED

JUL 10 2008

JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| CARRIE ELIZABETH PUGH WOOD, | CIVIL NO. 3:07CV00064 |
|---|---|
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| MOREQUITY, INC., | |
| *Defendant.* | JUDGE NORMAN K. MOON |

This matter is before the Court on the parties' cross-Motions for Summary Judgment (docket #11 and #14). Plaintiff Carrie Elizabeth Pugh Wood ("Ms. Wood") challenges a foreclosure sale that resulted from a default on a secured mortgage loan held by Defendant MorEquity, Inc. ("MorEquity"). Ms. Wood claims that the foreclosure sale is voidable because the newspaper advertisement notifying the public of the sale did not comply with Virginia Code § 55-59.3 and thereby violated Virginia Code § 55-59.2. However, Virginia law requires only substantial compliance with § 55-59.3, so long as the rights of the parties were not affected in any material way. Because I find that both of those conditions were satisfied here, I will grant MorEquity's Motion for Summary Judgment and enter judgment in favor of MorEquity in an Order to follow.

## BACKGROUND

In this diversity case, the material facts are not in dispute. For a period of time until March 31, 1993, Ms. Wood owned real property ("the Property") described on the public land records of Nelson County, Virginia as follows:

> All that certain tract of land together with all buildings, improvements and appurtenances, lying in the Lovingston Magisterial District of Nelson County, Virginia on State Highway 766, about four miles north of Lovingston, adjoining the lands of Hattie Spencer, Ralph Snead and Beatrice Ashley, together with the water right in the present water system of Beatrice Ashley, et ux, and necessary easement for pipeline, and also an easement for a telephone line.

(Pl.'s Br., Ex. A ¶ 3.) At all relevant times, Ms. Wood has resided on the Property in a house fronting on Stagebridge Road in Lovingston, Virginia, with a mailing address of 866 Stagebridge Road, Lovingston, Virginia 22949.

On March 31, 1993, Ms. Wood conveyed ownership of the Property to her son, Melvin Lewis Wood ("Mr. Wood"). Mr. Wood then brought onto the Property a double-wide trailer, where he resided with his wife. The parties do not dispute that it is affixed to the land and is therefore part of the realty. At all relevant times, the double-wide trailer has fronted on James Lane and has had a mailing address of 44 James Lane, Lovingston, Virginia 22949. Thus, there are two residences with separate addresses on the Property: the house on Stagebridge Road and the double-wide trailer on James Lane.

In October 1999, Fidelity First Mortgage, L.L.C. provided a loan to Mr. Wood in the amount of $124,000.00, which was evidenced by a Note and secured by a Deed of Trust on the Property. In the Deed of Trust, the Property is described using the recorded description set forth above and is said to "currently ha[ve] the address of 866 Stagebridge Road, Lovingston, Virginia 22949." (Def.'s Br., Ex. B at 3, 17.) After a series of assignments, MorEquity became the holder of the Note and Deed of Trust in June 2003.

At some point, Mr. Wood defaulted on the loan. MorEquity then instructed the substitute trustee to proceed to foreclosure of the Property pursuant to the Deed of Trust. In August 2007, the substitute trustee advertised twice in a local newspaper, the *Nelson County Times*, for a "TRUSTEE'S SALE OF REAL ESTATE located at 866 Stagebridge Road, Lovingston,

Virginia" to be held on August 23, 2007. (*Id.*, Ex. I.) The advertisement of sale did not contain the James Lane address. It did, however, set forth the recorded description of the Property, the tax map identification number for the Property, the Deed Book number and page number where the Deed of Trust is recorded, and the address and telephone number for a person who could be contacted for additional information about the sale. The advertisement did not explicitly refer to the existence of any residence on the Property.

The foreclosure sale occurred as scheduled, and MorEquity was the successful bidder, with a bid of $144,040.71. MorEquity subsequently filed an unlawful detainer action in the General District Court of Nelson County, Virginia against Mr. Wood and/or the current occupant of the Property.[1] Before the unlawful detainer action was heard, Mr. Wood executed a quitclaim deed transferring to Ms. Wood all of his rights and interests in the Property. He also assigned to Ms. Wood the cause of action that she is asserting here. The Nelson County court has stayed the unlawful detainer proceeding in light of the instant litigation.

In November 2007, Ms. Wood filed suit against MorEquity in the Nelson County Circuit Court, and MorEquity removed the case to this Court pursuant to the Court's diversity jurisdiction. In May–June 2008, the parties filed Motions for Summary Judgment. I dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and oral argument would not aid the decisional process.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to

---

[1] The "current occupant" MorEquity seeks to evict is Ms. Wood.

judgment as a matter of law." Fed. R. Civ. P. 56(c). "As to materiality .... [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Furthermore, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 250. Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and drawing reasonable inferences in the light most favorable to the nonmoving party, determines that the Rule 56(c) standard has been met. *See, e.g., id.* at 248–50 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir.1999).

If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' ... an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

A court should grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Indeed, the nonmoving party cannot defeat a properly supported motion for summary judgment

with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 317).

## DISCUSSION

The parties agree that Virginia law governs the substantive aspects of Ms. Wood's claim. In relevant part, § 55-59.3 of the Virginia Code states:

> The advertisement of sale . . . shall set forth a description of the property to be sold, which description need not be as extensive as that contained in the deed of trust, and shall identify the property by street address, if any, or, if none, shall give the general location of the property with reference to streets, routes, or known landmarks. Where available, tax map identification may be used but is not required. The advertisement . . . . shall set forth the name, address and telephone number of such person (either a trustee or the party secured or his agent or attorney) as may be able to respond to inquiries concerning the sale.

Va. Code Ann. § 55-59.3. The parties acknowledge, as they must, that the Virginia Supreme Court has "held that substantial compliance [with § 55-59.3] is sufficient so long as the rights of the parties are not affected in any material way." *Va. Hous. Dev. Auth. v. Fox Run Ltd. P'ship*, 497 S.E.2d 747, 754 (Va. 1998) (citing *Bailey v. Pioneer Fed. Sav. & Loan Ass'n*, 172 S.E.2d 730, 734 (Va. 1970)). Thus, to prevail on her claim, Ms. Wood must show either that the advertisement of sale did not substantially comply with the requirements of § 55-59.3, or that she was materially prejudiced by any noncompliance.

Ms. Wood centers her claim on the requirement that an advertisement of sale "shall identify the property by street address, if any." Va. Code Ann. § 55-59.3. Her argument in this regard is straightforward:

> [T]here were two street addresses for the property, one [for] 866 Stagebridge Road, Lovingston, Virginia 22949, and the other for 44 James Lane, Lovingston,

Virginia 22949. The language of the statute required the substitute trustee to list both street addresses.... By designating one street address for the property in the newspaper advertisement for foreclosure, the substitute trustee indicated there was one residence located on the property. It thereby indicated that the property was less valuable than it was, because, in fact, there were two residences on the property.... Therefore, the indication in the advertisement that there was only one residence on it was prejudicial against obtaining the best price for the sale because it failed to provide correct information to the public that would manifestly tend to make it more likely for investors to attend the sale.[2]

(Pl.'s Br. 6–7.)

I will assume without deciding that the premise of Ms. Wood's argument—that "there were two street addresses for the property"—is sound and that "[t]he language of the statute required the substitute trustee to list both street addresses." (*Id.* at 6.) The question, then, is whether the advertisement of sale substantially complied with the statute despite its failure to include the James Lane address. I hold as a matter of law that it did.

The case of *Riley v. Robey*, 122 F. Supp. 2d 684 (W.D. Va. 2000), *aff'd*, 25 Fed. Appx. 149 (4th Cir. 2002), is instructive. At issue in *Riley* were two advertisements of sale. Both failed to include the subject property's street address but did contain its mailing address, which was the only address listed in the deeds of trust. *Id.* at 686. One of the advertisements contained a detailed legal description of the property, while the other contained a more general description of the property, supplemented with references to the Deed Book and page numbers where more detailed descriptions could be found. *Id.* Relying on the Virginia Supreme Court's decision in *Fox Run*, the court in *Riley* held that the advertisements substantially complied with § 55-59.3, reasoning as follows:

---

[2] In addition, Ms. Wood argues that a violation of § 55-59.3 also constitutes a violation of § 55-59.2. Section 55-59.2 sets forth requirements governing the publication of an advertisement of sale. It does not address the content of such an advertisement, nor does it expressly incorporate the requirements of § 55-59.3. I presume that Ms. Wood has invoked § 55-59.2 because it provides that "[f]ailure to comply with the requirements for advertisement contained in this section shall . . . render a sale of the property voidable by the court," whereas § 55-59.3 does not specify any particular remedy for its violation. Regardless, I need not decide whether a violation of § 55-59.3 also constitutes a violation of § 55-59.2 because, as I will explain, MorEquity's advertisement of sale did not violate § 55-59.3.

- 6 -

> In *Fox Run*, the court found that reference in the notice of sale to the deed of trust for a further description of the property for sale satisfied the notice requirements of section 55-59.3. Likewise, this court finds that the description of the property, combined with the same address as listed in the deed of trust and the reference to the Deed Book for further descriptions of the property at issue constitutes substantial compliance with the notice requirements of section 55-59.3.

*Riley*, 122 F. Supp. 2d at 687.

Like the advertisements at issue in *Riley*, MorEquity's advertisement of sale contained a description of the Property, the only address listed in the Deed of Trust, and a reference to the Deed Book and page number where the Deed of Trust could be found. Under the standard enunciated in *Riley*, these facts alone are sufficient to establish that MorEquity substantially complied with § 55-59.3. However, MorEquity's advertisement went even further than those in *Riley*, containing (1) a street address for the Property rather than a mailing address; (2) the entirety of the only recorded legal description of the Property, which implicitly references both residences by stating that the Property includes the "tract of land together with all buildings, improvements and appurtenances" (Def.'s Br., Ex. I); (3) the Property's tax map identification number, under which Nelson County tax records indicate that there are two residences on the Property (Pl.'s Br., Ex. E ¶ 2); and (4) the address and telephone number for a person who could be contacted for additional information. Thus, it is clear that MorEquity's advertisement of sale substantially complied with the requirements of § 55-59.3.

The remaining question is whether Ms. Wood was materially prejudiced by MorEquity's failure to include the James Lane address in the advertisement of sale. She claims that "the indication in the advertisement that there was only one residence on [the Property] was prejudicial against obtaining the best price for the sale because it failed to provide correct information to the public that would manifestly tend to make it more likely for investors to attend the sale." (Pl.'s Br. 7.) The problem for Ms. Wood is that she offers no evidence to support this

- 7 -

Case 3:07-cv-00064-NKM-BWC   Document 22   Filed 07/10/08   Page 7 of 10   Pageid#: 257

claim.[3] Rather, she argues that she is not required offer evidence proving material prejudice. Though her argument is not entirely clear, it appears to be that a *presumption* of material prejudice should apply.[4]

In support of such a presumption, Ms. Wood first argues that "MorEquity misreads the statute and case law in seeking to impose a legal standard that would require [her] to prove that the defect in the newspaper advertisement prevented a higher bid." (Pl.'s Resp. 5.) The standard she describes, however, is simply the default burden of proof that applies to all plaintiffs. Notably, Ms. Wood does not cite, and I am not aware of, any authority for relieving her of that burden under the circumstances presented.

Indeed, it is Ms. Wood who "misreads the statute and case law" in claiming that there exists a presumption of material prejudice. In *Bailey v. Pioneer Federal Savings and Loan Ass'n*, 172 S.E.2d 730 (Va. 1970), the Virginia Supreme Court addressed an advertisement of sale that was allegedly defective in several respects.[5] *Id.* at 734–35. One of the defects was a statement in the advertisement that the trustee might require a bidder's deposit of $200, whereas the then-applicable statute limited such deposits to $100. *Id.* The court upheld the sale, finding that there was substantial compliance and stating that "there is no evidence that the statement in the advertisement depressed the bidding or that the rights of [the plaintiff] were affected in any material way." *Id.* at 735. Implicit in the court's statement is the assumption that a finding of

---

[3] To the extent she might be requesting that the Court take judicial notice that realty containing two residences is more valuable than realty containing one residence, I decline to do so. Although the proposition advanced by Ms. Wood may generally be true, she offers no evidence that it is always true. Moreover, one can easily imagine circumstances in which realty containing only one residence would be more valuable. For example, one of the two residences on a particular parcel of land might be in such disrepair and such an eyesore that the realty would be more valuable and of more interest to prospective buyers if the offending residence were removed. Thus, Ms. Wood's proposition is not amenable to judicial notice. *See* Fed. R. Evid. 201(b).

[4] Ms. Wood does not specify whether such a presumption would be irrebuttable or would merely shift the burden to MorEquity to prove that including the other address would *not* have resulted in a higher sale price.

[5] Although *Bailey* was decided prior to the enactment of § 55-59.3 and dealt only with the advertisement requirements imposed by a deed of trust, the Virginia Supreme Court in *Fox Run* relied on *Bailey* to hold that § 55-59.3 requires only "substantial compliance . . . so long as the rights of the parties are not affected in any material way." *Fox Run*, 497 S.E.2d at 754 (citing *Bailey*, 172 S.E.2d at 734).

material prejudice must be based on at least some evidence. By failing to offer any evidence that her rights were materially affected by the absence of the James Lane address from the advertisement of sale, Ms. Wood has failed to satisfy her burden of proof.[6]

Ms. Wood's other argument in favor of applying a presumption of material prejudice is premised on her assumption that proving such prejudice "would require [her] to locate one or more potential investors who would have attended the foreclosure auction if they had known the property had two residences instead of one." (Pl.'s Resp. 5.) Clearly, such a requirement would pose a significant hurdle to Ms. Wood and others similarly situated, though whether it would justify relieving them of their burden of proof is questionable. Regardless, the premise is flawed in that it overlooks other possible means of showing material prejudice. Here, Ms. Wood has not even offered an expert appraisal of the Property's value. Although I decline to speculate as to what hypothetical evidence might have satisfied Ms. Wood's burden, I am not persuaded that such evidence could only take the form of prospective buyers "who would have attended the foreclosure auction if they had known the property had two residences." (Pl.'s Resp. 5.)

## CONCLUSION

The advertisement of sale substantially complied with the requirements of Virginia Code § 55-59.3, and there is no evidence that the rights of the parties were affected in any material way. Thus, there is no basis for setting aside the foreclosure sale. Accordingly, I will grant

---

[6] Though by no means conclusive, the limited evidence in the record as to the Property's value tends to suggest that Ms. Wood's rights were not materially affected. Such evidence consists of the tax assessment of the Property and a late-submitted offer to purchase the Property. The assessed value of the Property, including both residences, is $154,300.00. (Pl.'s Br., Ex. D.) The late offer, submitted by the owner of an adjacent property, was for $106,000.00 and made clear that the offeror was fully aware of the two residences. (Def.'s Resp., Ex. A.) Thus, MorEquity's winning bid of $144,040.71 (Def.'s Br., Ex. J) was less than 7% below the assessed value and well over the amount of the only other offer. Of course, Ms. Wood's argument is that there would have been more offers had the advertisement listed both addresses. The available evidence suggests, however, that any such offers might well have had little effect on the final sale price.

MorEquity's Motion for Summary Judgment and enter judgment in favor of MorEquity in an Order to follow.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered this 10th day of July, 2008.

*signature*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE